IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| GERALD MANGUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-2637-SHM-tmp |
| | ) | |
| BILL LEE AND DAVID B. RAUSCH, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO DISMISS (ECF NOS. 18-19)**

On October 6, 2021, Plaintiff Gerald Mangum filed a complaint for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. (ECF No. 1.) The complaint seeks permanent injunctive relief that bars application of the Tennessee Sexual Offender And Violent Sexual Offender Registration, Verification And Tracking Act Of 2004, *see* Tenn. Code Ann. §§ 40-39-201, *et. seq* (the "Act"), to Mangum for the remainder of his life. (*Id*. at PageID 1 & 3.) On October 7, 2021, the Court granted leave to proceed *in forma pauperis*. (ECF No. 7.) On December 29, 2021, summonses were returned executed as to Tennessee Governor Bill Lee and Tennessee Bureau of Investigation (the "TBI") Director David B. Rausch (collectively, the "Defendants").[1] (ECF Nos. 15 & 16.) On January 26, 2022, the Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief (the "MTD"). (ECF Nos. 18 & 19.) On April 14, 2022, Mangum filed a response in opposition to the MTD. (ECF No.

---

[1] On November 30, 2021, Lee and Rausch were substituted as Defendants for former Tennessee Governor William E. Haslam and former TBI Director Mark Gwyn. (ECF No. 10.)

22 (the "Response").)² On April 21, 2022, the Defendants filed a reply to the Response. (ECF No. 23 (the "Reply").)

The MTD, the Response, and the Reply are before the Court.³

For the reasons stated below, the Court GRANTS the MTD (ECF Nos. 18-19).

I.  **BACKGROUND**

In 1981, Mangum pled guilty to rape of a twenty-year-old woman in Mississippi (the "Plea"). (ECF No. 1 at PageID 3.) After Mangum's release from incarceration, he transferred his parole to Memphis, Tennessee, where he must comply with the Act's requirements for supervision and registration on Tennessee's sex offender registry. (*Id*. at PageID 3-4.) Tennessee had not enacted a sex-offender-registration statute at the time of the Plea. (*Id*.) Mangum alleges that the Act violates the Ex Post Facto Clause of the U.S. Constitution "because it makes more burdensome the punishment imposed for offenses committed prior to its enactment." (*Id*.) Mangum seeks an order: (1) enjoining the Defendants from (a) enforcing the Act against Mangum, (b) requiring Mangum to comply with the Act, and (c) confining Mangum to his home during the month of October annually; (2) removing Mangum from Tennessee's sex offender registry; (3) declaring the Act unconstitutional under the Ex Post Facto Clause as applied to Mangum; and (4) awarding attorney's fees and costs of suit. (*Id*. at PageID 5-6.)

The MTD contends that the complaint fails to state a claim on which relief can be granted "because it lacks sufficient facts to render the ex post facto claim facially plausible." (ECF No. 19 at PageID 140.) The Response alleges four additional factual details about the Plea (ECF No.

---

² Mangum's failure to timely file the Response is not itself grounds for granting the MTD because the Defendants seek dismissal of the complaint (ECF No. 19 at PageID 144). *See* Local Rule 7.2(a)(2).

³ Although the Court has not screened Mangum's complaint under the Prison Litigation Reform Act (the "PLRA"), *see* 28 U.S.C. § 1915A(b) & § 1915(e)(2)(B), the Court reviews the MTD to expedite resolution of the case.

22 at PageID 158)[4] and summarizes other courts' decisions about application of sex-offender-registration laws (*id*. at PageID 153-55 & 156-58). The Reply contends that "[n]othing in [the] [R]esponse cures the insufficiency of [Mangum's] pleading." (ECF No. 23 at PageID 161.)

## II.     STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." *Cooper Butt ex rel. Q.T.R. v. Barr*, 954 F.3d 901, 904 (6th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The factual allegations must be more than speculative. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Courts consider complaints in the light most favorable to the plaintiffs. *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020) (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). Courts accept as true all factual allegations, but do not accept legal conclusions or unwarranted factual inferences as true. *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018). "The plaintiff must present a facially plausible complaint asserting more than bare legal conclusions." *Id.* (citing *Twombly*, 550 U.S. at 556; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

## III.    ANALYSIS

---

[4] None of the Response's supplemental factual allegations is properly before the Court. A legal memorandum is not the correct method to supplement a complaint. In ruling on a motion to dismiss, the Court is limited to the allegations in the complaint. *See, e.g.*, *Laporte v. City of Nashville*, No. 3:18-CV-00282, 2019 WL 845413, at *3 (M.D. Tenn. Feb. 21, 2019) (finding "the court cannot consider new facts discussed in plaintiff's response brief for purposes of defendant's motion to dismiss"). Allegations may be supplemented only by the filing of an amended complaint. *See, e.g.*, *Wylie v. City of New Haven*, No. 3:02-cv-313, 2003 WL 23498386, at *2 (D. Conn. Feb. 27, 2003).

The Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I § 10, cl. 1. "Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). For a law to fall within the ex post facto prohibition: (1) "it must apply to events occurring before its enactment"; and (2) "it must disadvantage the offender affected by it ... by altering the definition of criminal conduct or increasing the punishment for the crime[.]" *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (internal citation and quotation marks omitted); *accord Hill v. Snyder*, 900 F.3d 260, 266 (6th Cir. 2018). The Constitution "does not bar *all* retroactive lawmaking, but only retroactive punishment." *Does # 1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016), *cert. denied*, 138 S.Ct. 55, 199 L.Ed.2d 18 (2017).

In *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), the Supreme Court established an intents-effects analysis to determine whether a sex offender registry law violates the Ex Post Facto Clause of the Constitution. A plaintiff raising an ex post facto challenge to a sex offender registry law must demonstrate: (1) that the legislature intended the registry law to impose punishment (the "Intent Prong"); and (2) if not, that the statutory scheme is "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil" (the "Effects Prong"). *Smith*, 538 U.S. at 92; *see also Doe v. Rausch*, 461 F. Supp. 3d 747, 793 (E.D. Tenn. 2020); *Snyder*, 834 F.3d at 700. To analyze the Effects Prong, courts consider five non-dispositive guideposts (the "Effects Factors") when evaluating the pertinent statute's actual effects:

> (1) Does the law inflict upon a plaintiff what has been regarded in our history and traditions as punishment?
> (2) Does it impose an affirmative disability or restraint on plaintiff?
> (3) Does it promote the traditional aims of punishment against plaintiff?
> (4) Does it have a rational connection to a non-punitive purpose?
> (5) Is it excessive with respect to this purpose?

4

*Doe*, 461 F. Supp. 3d at 762 (citing *Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97)). Courts apply the Effects Factors to a plaintiff's particular circumstances when he alleges an as-applied challenge. *See Reno v. Flores*, 507 U.S. 292, 300, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (an as-applied challenge is limited to review of how a statute has been "applied in a particular instance"); *Women's Medical Prof. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997), *cert. denied*, 523 U.S. 1036, 118 S.Ct. 1347, 140 L.Ed.2d 496 (1998); *and see* ECF No. 1 at PageID 2-3.

A complaint asserting an ex post facto challenge to a sex offender registry law must allege more than (1) a bare allegation about the statute's retroactive application or (2) a conclusory assertion that retroactive application amounts to retroactive punishment. *See Hodges v. Slatery*, No. 3:19-CV-00502, 2020 WL 758811, at *3 (M.D. Tenn. Feb. 14, 2020) (citing *Doe v. Haslam*, No. 3:16-cv-02862, 2017 WL 5187117, at *19 (M.D. Tenn. Nov. 9, 2017))

    A.    <u>*The Intent Prong*</u>: Mangum alleges that the Act is punitive because it: (1) requires him to register quarterly or, in certain situations, within forty-eight hours; (2) restricts where he may live or work and where he can travel; (3) negatively affects his familial relationships; (4) subjects him to unspecified "state-imposed restrictions"; and (5) "confine[s]" him "to his residence" for the "month of October." (ECF No. 1 at PageID 1-2.)

Mangum's factual allegations are deficient for purposes of the Intent Prong.

    1.    Mangum overstates the Act's restrictions.

The Act does not impose any restrictions on how an offender may behave during the month of October, and the Act does not require that an offender be confined to his home for the duration of each October. *See* ECF No. 1 at PageID 2; *cf.* Tenn. Code Ann. § 40-39-211 (setting out residence and employment restrictions). The Act does not restrict where Mangum may travel. (*See* ECF No. 1 at PageID 2; *cf.* Tenn. Code Ann. § 40-39-204(h) (requiring only that an offender report to law enforcement at least 21 days before traveling). Mangum alleges that he must

regularly report in person, *see* ECF No. 1 at PageID 1, but such reporting requirements have long been upheld as constitutional.  *See Smith*, 538 U.S. at 102-05.

       2.       The Tennessee General Assembly expressly rejected any punitive intent in enacting the Act.

The Tennessee General Assembly "declare[d] that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders."  *See* Tenn. Code Ann. § 40-39-201(b)(8); *see also Jackson v. Rausch*, No. 3:19-cv-377, 2021 WL 4302769, at *5 (E.D. Tenn. Sept. 21, 2021) ("the parties appear to agree that the Tennessee General Assembly did not intend for the Act or the subsequent amendments to be punitive") (citing *Ward v. State*, 315 S.W.3d 461, 470 (Tenn. 2010) ("[t]he plain language of this statute expresses a nonpunitive intent to protect the public")).

The Response canvasses the enactment history of various sex offender registry laws in the United States.  (*See* ECF No. 22 at PageID 151-53 & 154-55.)  That summary does not remedy Mangum's pleading deficiency.

The complaint does not allege sufficient facts demonstrating that the Tennessee General Assembly intended the Act to impose punishment.  Mangum fails to satisfy the Intent Prong.

       B.       *The Effects Prong*:  The complaint alleges several nonspecific effects the Act has on Mangum.  Mangum vaguely alleges that he cannot live or work in many areas.  (ECF No. 1 at PageID 2 (alleging Mangum is "restricted as to when [I] can travel").)  Mangum does not allege that the Act prevents him from finding employment or shelter.  Mangum alleges the Act negatively impacts his family relationships, but the complaint does not allege any facts to support Mangum's conclusory statement.  (ECF No. 1 at PageID 2 (alleging Mangum is "hindered from maintaining normal family relationships").)  The complaint leaves open the possibility that Mangum's rape

conviction itself impaired his family relationships. *See Doe v. Lee*, No. 3:21-CV-00028, 2021 WL 1907813, at *17 (M.D. Tenn. May 12, 2021) ("[E]ven if Doe had never been made subject to the Act, he would likely face social stigma based on his rape convictions and his lengthy period of incarceration"). Mangum fails to allege facts demonstrating how each of the Act's challenged restrictions affects his life.

Mangum's pleading deficiency is similar to the plaintiff's deficiency in *Hodges*, 2020 WL 758811, at *1. Hodges alleged that the Act violated the Ex Post Facto Clause by requiring "that Plaintiff register in person with state authorities every 90 days for the rest of his life and report such things as the purchase of a new cell phone; that his status as a sex offender be publicly disseminated; and [by] [imposing] what Plaintiff vaguely refers to as 'residential restrictions.'" *Id*. at *2. Hodges's "only allegation of resulting harm is the nonspecific report of job loss and being forced to move." *Id*. The Court concluded that Hodges's bare allegations failed to state a claim to relief under the Ex Post Facto Clause:

> True, the Act's registration requirement may be onerous and the public dissemination of Plaintiff's status as a violent sex offender painful. But the bare allegation that he is subject to these things despite no such law being on the books in 1987 when he was convicted, and that he will be liable if he fails to register, combined with the conclusory assertion that this amounts to "retroactive punishment," is not sufficient to state a plausible Ex Post Facto claim … Plaintiff has failed to plead sufficient facts to support a plausible claim that his constitutional rights have been violated as a result of the Act's application to him.

*Id*. at PageID *3. Like Hodges, Mangum refers generally to the Act's registration requirements, the residential restrictions, and several other "nonspecific" effects. (ECF No. 1 at PageID 1-2.) Mangum's broad allegation that the Act "subject[s]" him to a "vast array of state-imposed restrictions" (ECF No. 1 at PageID 2) is too "bare" and "conclusory" to show how the Act affects Mangum, much less that the Act's effect is punitive. *See Littlefield v. Slatery*, No. 3:19-cv-0490, 2020 WL 263585, at *4 (M.D. Tenn. Jan. 17, 2020).

7

The Response does not address the complaint's deficiency in pleading facts to support the Effects Analysis. (*See* ECF No. 22 at PageID 153-55 & 156-58.) Mangum contends instead that the MTD should be denied based on public policy reasons. (*See id*.) Mangum must allege sufficient facts, not policy arguments, to defeat the MTD. He has not done so.

The cases cited in the Response do not alter this conclusion. In *Doe v. Rausch*, 382 F. Supp. 3d 783, 799 (E.D. Tenn. 2019), the Court concluded that the effect of lifetime compliance with the Act was punitive as applied to the John Doe Plaintiff. Unlike Mangum's case, the record in *Doe* demonstrated how the Act was punitive as applied in John Doe's particular circumstances. *See, e.g., id*. at *789-90 (John Doe could not attend family functions in parks or decorate his home for Halloween or Christmas, and "his picture was published in certain local newspapers sold at convenience stores – 'a Thrifty Nickel-type deal' – that includes a section on individuals listed on the Registry. Plaintiff['s] status as a sex offender is listed on his photo identification").

The Response's reliance on *Doe #1 v. Lee*, 518 F. Supp. 3d 1157 (M.D. Tenn. 2021) is also misplaced. In *Doe #1*, the Court concluded the sex offender-plaintiffs had demonstrated that retroactive application of the Act's geographic restrictions resembled the punishment of banishment in the plaintiffs' circumstances. *Id*. at 1188. The *Doe #1* plaintiffs' factual demonstration supported their as-applied challenge to the Act. *Id*. Unlike Mangum, the *Doe #1* plaintiffs "put into the record facts that show that they are, in fact, facing real consequences in their lives from such banishment":

> Doe #1's minor son suffered a stroke and needs to swim twice a week. Doe #1 cannot swim with his son at public swimming pools. Doe #1 bought a remote-control airplane for his son, but he is unable to go to the park with him to fly it. Doe #1 has a contract to deliver topsoil to a school system, but he does not make the deliveries himself for fear of violating [the Act's] geographic restrictions.
>
> Doe #2 states that he cannot go to the park with his daughter. Due to financial difficulties, Doe #2 needs to move out of his current home. A friend offered Doe #2 a place to stay, but Doe #2 was unable to accept the offer because the house was

> too close to a prohibited area. Doe #2 had to consult with an attorney to determine the distance of the home from the prohibited area.
>
> [T]he Court finds that Plaintiffs have shown that they are effectively banished from much of Davidson County, as they have shown that their living and recreational activities have been limited by [the Act's] exclusionary zones. This finding supports Plaintiffs' as-applied challenge.

*Id*. Mangum's complaint is deficient by comparison to *Doe #1*. There are no facts in the complaint showing the Act's effect as applied in Mangum's circumstances. Although the Court does not conclude that Mangum *cannot* sufficiently allege the Effects Factors, his § 1983 complaint has not done so. In considering the Effects Factors, the Court "cannot speculate whether [parties] *could* produce such information or not." *See Doe*, 382 F. Supp. 3d at 799 (emphasis in original).

Mangum fails to allege sufficient facts to satisfy the Effects Prong because the complaint does not allege sufficient facts demonstrating that the Act's effect on Mangum is punitive.

For the reasons stated above, Mangum fails to allege sufficient facts to demonstrate the Intent Prong or the Effects Prong. Therefore, he fails to state a claim to relief for the Act's alleged violation of the Ex Post Facto Clause as the Act applies to him.

## IV.   **CONCLUSION**

The MTD is GRANTED because the complaint fails to allege sufficient facts demonstrating that the Act violates the Ex Post Facto Clause as applied to Mangum

**IT IS SO ORDERED** this 20th day of July, 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE